```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| WEBWAY 360, INC., | No. 25-CV-03402(MEF)(CF) |
| *Plaintiff*, | |
| v. | **OPINION and ORDER** |
| XEROX CORPORATION et al., | |
| *Defendants*. | |

\*   \*   \*

**I.   Background**

**II.  Breach of Contract**

    **A.   The Parent Company**

    **B.   The Servicer**

    **C.   The Lender**

    **D.   The Supplier**

**III. The Implied Warranties**

    **A.   The Lender**

    **B.   The Supplier**

    **C.   The Parent Company**

**IV.  Express Warranty**

**V.   New Jersey Consumer Fraud Act**

**VI.  Conclusion**

\*   \*   \*

A print shop leased a commercial printer, but came to believe it was not up to snuff.

So the print shop sued various companies that were allegedly involved in providing it with the machine.

Those companies now move to dismiss.

Their motion is granted in part.

       *  *  *

I. **Background**

The allegations[1] here in a nutshell:

A print shop[2] leased a commercial-grade printer for its business. See First Amended Complaint and Demand for Jury Trial ("Complaint") (ECF 9) ¶ 13.  But the printer did not work well, see id. ¶ 14, and after some failed repair attempts, see id. ¶ 16, the company gave up and got a replacement.  See id. ¶ 22.

In light of the above, the company (from here, "the Plaintiff") filed this lawsuit.

The lawsuit named: (1) the supplier of the printer ("the Supplier"),[3] see id. ¶ 8, Complaint, Exhibit A ("Exhibit A") (ECF 9-1) at 2; (2) a company that provided the Plaintiff with some financing for the printer lease ("the Lender"),[4] see Complaint ¶ 7; Exhibit A at 2; (3) an entity that seemed to have had some responsibility for servicing the printer ("the Servicer"),[5] see Complaint ¶ 9; Complaint, Exhibit C ("Exhibit C") (ECF 9-1) at 31; and (4) the asserted parent of entities (1), (2), and (3), called "the Parent Company" here.[6]  See Complaint ¶¶ 4, 6.

---

[1]  Because this is a motion to dismiss, the Court must treat all of the allegations as true.  See McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009).  Whether they are in fact true --- that is a question for later in the case.

[2]  Webway 360, Inc.

[3]  Carr Business Systems, Inc.

[4]  Xerox Financial Services LLC.

[5]  Stewart – A Xerox Business Solutions Company.

[6]  Xerox Corporation.

2

The Supplier, the Lender, the Servicer, and the Parent Company --- these are collectively called "the Defendants."

The Plaintiff pressed the same claims as to each of the Defendants. See Complaint ¶¶ 24, 29-30, 34, 43-44, 51.

\*   \*   \*

The Defendants now move to dismiss each of these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The motion is granted in part, and denied in part.

## II. Breach of Contract

First, the Plaintiff raised breach of contract claims. See id. ¶¶ 23-27.

Walk through these defendant by defendant.[7]

---

[7] There is some back-and-forth as to whether the breach of contract claims arise under New Jersey law. See Memorandum of Law in Opposition to Defendants['] Motion to Dismiss Plaintiff's First Amended Complaint ("Plaintiff's Opposition") (ECF 17) at 13-15. Or whether New York law controls, or maybe Connecticut law. See Memorandum of Law in Support of Defendants['] Motion to Dismiss Plaintiff's First Amended Complaint ("Defendants' Brief") (ECF 16-1) at 13. But none of this matters for now. In a diversity case like this one, see Complaint ¶ 11, a court applies the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). And under New Jersey choice-of-law rules, the first step "is to determine whether an actual conflict exists . . . by examining the substance of potentially applicable laws to determine whether there is a distinction between them." P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008) (cleaned up). If there is no "actual conflict," then there is no choice-of-law work to do. See id. Under New Jersey law, not just any legal conflict will trigger a choice-of-law analysis. The conflict must be more than abstract. It must make a practical, real-world difference --- the sort that would have a bottom-line impact on how the court would actually resolve the particular claim before it. See Schulman v. Zoetis, Inc., 684 F. Supp. 3d 275, 286 (D.N.J. 2023); Joyce v. Jaguar Land Rover N. Am., LLC, 768 F. Supp. 3d 674, 693 n.23 (D.N.J. 2025); McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 584 (2017); In re Accutane Litig., 235 N.J. 229, 254 (2018). Here, as will be seen in a moment, it does not matter whether New Jersey, New

### A. The Parent Company

As to the Parent Company, the breach of contract claim must be dismissed.

Under New Jersey law, a breach of contract claim requires the plaintiff to establish that "the parties entered into a contract[.]" Goldfarb v. Solimine, 245 N.J. 326, 338 (2021) (cleaned up).[8]

Here, the Plaintiff alleges that it "entered into a lease agreement with [the] . . . Defendants for a . . . [commercial] printer." Complaint ¶ 13. And attached to the complaint, at Exhibit A, are certain contractual materials. See id.

In particular, Exhibit A includes two agreements. A document labeled "Sales & Service Agreement." See Exhibit A at 5-10. And another document titled "Cost Per Image Agreement." See id. at 2-4 ("Per Image Agreement").[9]

But the Parent Company is not a party to the first agreement. See Sales & Service Agreement § 1; Exhibit A at 5. And not the second one, either. See Per Image Agreement § 1; Exhibit A at 2.

---

York, or Connecticut law is applied. The breach of contract claims must be dismissed as to each Defendant, regardless of which law controls. So there is no need to go further, and to wade into a choice-of-law analysis.

[8] Same under New York law. See 34-06 73, LLC v. Seneca Ins. Co., 39 N.Y.3d 44, 52 (2022). And Connecticut law. See Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn. 282, 291 (2014).

[9] The Court can look to these materials. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); 5B Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (4th ed. 2025).

4

Accordingly, the breach of contract claim against the Parent Company must be dismissed. A non-party to a contract cannot ordinarily[10] be liable for its breach.[11]

### B. The Servicer

Same result as to the Servicer. It, too, is not a party to the agreements. See Sales & Service Agreement § 1; Exhibit A at 5; Per Image Agreement § 1; Exhibit A at 2.

### C. The Lender

As to the Lender, it was a party to one of the agreements --- the Per Image Agreement. See Per Image Agreement § 1.

But the breach of contract claim against the Lender must be dismissed, too.

---

[10] "Ordinarily" because there are some contexts in which C can be bound to a contract that only A and B signed. See, e.g., John F. Coyle & Robin J. Effron, Forum Selection Clauses, Non-Signatories, and Personal Jurisdiction, 97 Notre Dame L. Rev. 187, 194-97 (2021). But the closest the Plaintiff comes to an argument along these lines is a light suggestion that the Supplier and the Lender (parties to the agreements) are alter egos of the Parent Company and the Servicer (not parties to the agreements). See Plaintiff's Opposition at 13-14. But as to those contentions, the Plaintiff offers no meaningful factual allegations. Nothing, for example, to suggest in a non-conclusory way that the Parent Company or the Servicer "so dominated" the contracting parties (the Lessor and the Supplier) that the contracting parties did not have a real "separate existence" but were instead "merely . . . conduit[s] for the [Parent Company or the Servicer]." Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 501 (1983) (describing aspects of New Jersey's alter-ego law); see also Etage Real Est. LLC v. Stern, 182 N.Y.S.3d 47, 48 (App. Div. 2022) (similar, New York law); Deutsche Bank AG v. Sebastian Holdings, Inc., 364 Conn. 564, 592 (2023) (similar, Connecticut law).

[11] This is true under New Jersey law. See Comly v. First Camden Nat. Bank & Tr. Co., 22 N.J. Misc. 123, 127 (1944). New York law. See Victory State Bank v. EMBA Hylan, LLC, 95 N.Y.S.3d 97, 102 (App. Div. 2019). And Connecticut law. See FCM Grp., Inc. v. Miller, 300 Conn. 774, 797-98 (2011).

Under New Jersey law, to state a breach of contract claim, the plaintiff must show that the defendant "did not do what the contract required [it] to do." Goldfarb, 245 N.J. at 338.[12]

There is one allegation in the complaint that speaks to arguable daylight between (a) what the Lender was required to do under its contract, and (b) what was done:

> [The Defendants] breached their contractual obligations by failing to provide a functioning printer, failing to provide a commercially operable machine, and by failing to cure the defects after being notified.

Complaint ¶ 24.

But this allegation does not purport to zero in on any particular provisions of the contract that obligated the Lender to ensure the printer "function[ed]" or was "commercially operable," id., or to repair the printer ("cure the defects") if the Lender got a call ("after being notified"). And the Plaintiff's legal brief does not spotlight any specific contractual provisions that might be relevant, either. See Plaintiff's Opposition at 12–16.

There is nothing "plausible," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up), about a breach of contract claim that does not indicate which contractual obligations a defendant breached. See Fabbro v. DRX Urgent Care, LLC, 616 F. App'x 485, 487 (3d Cir. 2015) (dismissing breach of contract claim because "[p]laintiffs . . . failed to cite to a single provision of the [agreement] that . . . [was] breached"); Frederico v. Home Depot, 507 F.3d 188, 204 (3d Cir. 2007) (dismissing breach of contract claim because complaint "does not disclose how [the defendant] breached the Agreement"); Flaherty-Wiebel v. Morris, Downing & Sherred, 384 F. App'x 173, 178 (3d Cir. 2010) (dismissing breach of contract claim because the plaintiff did "not identif[y] any specific ways in which the defendants breached their obligations under the contract"); see also Grande Vill. LLC v. CIBC Inc., 2015 WL 1004236, at *5 (D.N.J. Mar. 6, 2015); Wingate Inns Int'l, Inc. v. Cypress Ctr. Hotels, LLC, 2012 WL 6625753, at *9 (D.N.J. Dec. 19, 2012); Faistl v. Energy

---

[12] Connecticut's law has the same requirement. See Meyers, 311 Conn. at 291. So does New York's. See 34-06 73, LLC, 39 N.Y.3d at 52.

Plus Holdings, LLC, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012).

Accordingly, the breach of contract claim against the Lender must be dismissed.

### D. The Supplier

Same result for the Supplier. It was a party to the Sales & Service Agreement. See Sales & Service Agreement § 1; Exhibit A at 5.

And the Plaintiff's breach of contract theory is apparently that the Supplier was obligated under the Sales & Service Agreement to ensure that the printer "function[ed]" and was "commercially operable." Complaint ¶ 24.

But the complaint does not zoom in on any contractual provisions that assertedly required the Supplier to do those things.

\*   \*   \*

Bottom line: the breach of contract claims must be dismissed as to each of the Defendants.

## III. The Implied Warranties

Take now the Plaintiff's contention that the Defendants breached the implied warranty of merchantability and the implied warranty of fitness. See Complaint ¶¶ 28-30.

### A. The Lender

When it comes to the implied warranties claim against the Lender, there is another choice-of-law dispute.

Per the Plaintiff: New Jersey law controls. See Plaintiff's Opposition at 16-18. And per the Defendants: Connecticut law. See Defendants' Brief at 5, 16.[13]

But no matter.

---

[13] Why Connecticut law? Because the Lender was a party to the Per Image Agreement, see Per Image Agreement § 1; because a warranty is said to be implied by law into that Agreement, see Complaint ¶ 29; and because the Agreement has a Connecticut choice-of-law provision. See Per Image Agreement § 19.

7

New Jersey and Connecticut law point in the same direction, Namely: if a contract says with real clarity and with real conspicuousness that there is no implied warranty, then no such warranty can be read into the contract.[14] See Gladden v. Cadillac Motor Car Div., Gen. Motors Corp., 83 N.J. 320, 331 (1980); W. Dermatology Consultants, P.C. v. VitalWorks, Inc., 146 Conn. App. 169, 193-94 (2013).

Here, the Per Image Agreement disclaims any implied warranty this way:

> **XFS HAS NO INVOLVEMENT IN THE DESIGN, MANUFACTURE, SALE, DELIVERY, INSTALLATION, USE OR MAINTENANCE OF THE EQUIPMENT. THEREFORE, XFS DISCLAIMS, AND YOU WAIVE SOLELY AGAINST XFS, ALL EQUIPMENT WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT AND FITNESS FOR PARTICULAR PURPOSE, AND XFS MAKES NO REPRESENTATIONS WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, THE EQUIPMENT'S SUITABILITY, FUNCTIONALITY, DURABILITY OR CONDITION.**

Per Image Agreement § 12.

The words used are as they should be. Straightforward, plain-spoken, and direct.

And the key terms are unmissable. First, they are repeated over and over. Second, they are not here-and-there needles, buried in a haystack of technicalities or irrelevancies. And third,

---

[14] A qualifier here. The Uniform Commercial Code is a part of New Jersey and Connecticut law. See N.J. Stat. Ann. § 12A:1-101 et seq (West 2025); Conn. Gen. Stat. Ann. § 42a-1-101 et seq (West 2025). It applies to circumstances like this one, that concern a lease of equipment between commercial parties. See N.J. Stat. Ann. § 12A:2A-102 (West 2025); Conn. Gen. Stat. Ann. § 42a-2A-103 (West 2025); United Amusements & Vending Co. v. Sabia, 179 Conn. App. 555, 566 (2018) (Connecticut law); GE Cap. Com., Inc. v. Silver Labs, Inc., 2015 WL 2236645, at *8 (N.J. Super. Ct. App. Div. May 14, 2015) (New Jersey law). And if parties act with enough clarity, the Uniform Commercial Code allows them to waive otherwise-applicable implied warranties. See N.J. Stat. Ann. § 12A:2A-214(2)-(3)(a) (West 2025); Conn. Gen. Stat. Ann. § 42a-2A-506(b)-(c) (West 2025). How waivers might or might not work in cases not covered by the Uniform Commercial Code is not an issue before the Court.

8

the quoted paragraph stands out on the page. No fine print is used. If anything, the opposite: the paragraph relies on bold letters and capital ones, while most of the rest of the Agreement is in regular type. This is not a squint-or-you-might-miss-it situation.[15]

In short: the disclaimer is clear enough and conspicuous enough.

Therefore, the Per Image Agreement cannot be taken as containing any implied warranties, and the implied warranties claim must be dismissed against the Lender, which was a party to that Agreement.[16]

### B. The Supplier

Same basic analysis as to the Supplier.

It was a party to the Sales & Service Agreement. See Sales & Service Agreement § 1; Exhibit A at 5. And that Agreement has a New York choice-of-law provision. See Sales & Service Agreement § 23(a).

But nothing practical turns on whether New York law applies (as the Defendants argue, see Defendants' Brief, at 5, 16) or New

---

[15] See Oliva v. Thor Motor Coach, 2021 WL 7878906, at *4 (D.N.J. Oct. 6, 2021) (holding that contract's explicit disclaimer of implied warranties was effective, when it was "bolded, underlined, and . . . capitalized") (New Jersey law); Rapid Models & Prototypes, Inc. v. Innovated Sols., 2015 WL 4914477, at *8 (D.N.J. Aug. 18, 2015) (holding that a capital-letter disclaimer of implied warranty was effective) (New Jersey law); Tri Coast LLC v. Sherwin-Williams Co., 2018 WL 468279, at *3 (D.N.J. Jan. 18, 2018) (same) (New Jersey law); Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc., 31 Conn. App. 455, 471 (App. Ct. 1993) (same) (Connecticut law); W. Dermatology Consultants, P.C., 146 Conn. App. at 192–193 (same) (Connecticut law).

[16] The Plaintiff suggests that the referenced provision may be unconscionable, and therefore unenforceable. See Plaintiff's Opposition at 16–17. But the Plaintiff develops no meaningful argument as to this point, and does not reckon with the fact that the Uniform Commercial Code allows for disclaimers of implied warranties in commercial lease transactions. See, e.g., N.J. Stat. Ann. § 12A:2A-214 (West 2025); Conn. Gen. Stat. Ann. § 42a-2A-506 (West 2025).

9

Jersey law (as the Plaintiff argues, see Plaintiff's Opposition at 16-18).

The reason: conspicuous and clear written disclaimers of implied warranties are effective under each body of law. See Gladden, 83 N.J. at 331; W. 63 Empire Assocs., LLC v. Walker & Zanger, Inc., 968 N.Y.S.2d 455, 457 (App. Div. 2013).[17]

And here, the Sales & Service Agreement includes a disclaimer, and one that is written in capital letters, even though most of the Agreement is in ordinary type.

> COMPANY MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, ORAL OR WRITTEN, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF NON-INFRINGEMENT; IMPLIED WARRANTIES OF MERCHANTABILITY; OR FITNESS FOR A PARTICULAR PURPOSE, ALL OF WHICH ARE SPECIFICALLY AND UNRESERVEDLY EXCLUDED.

Sales & Service Agreement § 15.

This is enough for New Jersey law. See footnote 15.

And for New York law, too. See NY Drilling, Inc. v. TJM, Inc. LLC, 573 F. Supp. 3d 854, 859 (E.D.N.Y. 2021) (holding that language "in all capital letters . . . [that] clearly and explicitly disclaim[ed] the warranties of fitness and merchantability" was effective) (New York law); Travelers Ins. Cos. v. Howard E. Conrad, Inc., 649 N.Y.S.2d 586, 587 (App. Div. 1996) (same) (New York law); W. 63 Empire Assocs., LLC, 968 N.Y.S.2d at 457 (same) (New York law).

Given the disclaimer, the Sales & Service Agreement cannot be read to include any implied warranties.

So the implied warranties claim must be dismissed as to the Supplier, which was a party to that Agreement.[18]

---

[17] Recall here the qualifier in footnote 14.

[18] The Plaintiff also suggests this provision may be unconscionable. See Plaintiff's Opposition at 16-17. Same problem as the corresponding clause in the Per Image Agreement. See footnote 16.

10

**C.     The Parent Company**

Come now to the implied warranties claim as to the Parent Company.

As to this claim, the motion to dismiss is denied. The Parent Company bears the burden of persuasion, see Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016), and has not carried it.

\*   \*   \*

The Parent Company's first argument: the Plaintiff cannot invoke any implied warranty, because any such warranties were disclaimed in the Sales & Service Agreement and the Per Image Agreement. See Reply Memorandum of Law in Further Support of Defendants['] Motion to Dismiss Plaintiff's First Amended Complaint (ECF 18) at 9-10.

But the Parent Company is not a party to those agreements. See Part II.A.

If those agreements nonetheless benefit the Parent Company, by allowing it to invoke the agreements to eliminate the possibility of its having to bear implied-warranty liability --- then it is for the Parent Company to explain why.

\*   \*   \*

The Parent Company's second argument: the New York choice-of-law provision (in the Sales & Service Agreement) and the Connecticut choice-of-law provision (in the Per Image Agreement) mean that New York or Connecticut law apply --- and under those bodies of law, claims from a plaintiff who leased goods cannot go forward against a manufacturer (assuming that is what the Parent Company is) unless the plaintiff and the manufacturer were in privity with each other. See Defendants' Brief at 16-17.[19]

---

[19] Choice of law may potentially matter here at some point because there is an argument that New York and Connecticut law are as the Parent Company says --- privity is needed. See Aracena v. BMW of N. Am., LLC, 71 N.Y.S.3d 614, 616 (App. Div. 2018) (citing Arthur Jaffee Assocs. v. Bilsco Auto Serv., Inc., 58 N.Y.2d 993, 995 (1983)); Source One Fin. Corp. v. Rd. Ready Used Cars, Inc., 2014 WL 1013121, at *7 (Conn. Super. Ct. Feb. 14, 2014); Koellmer v. Chrysler Motors Corp., 6 Conn. Cir. Ct. 478, 485 (1970). But New Jersey law, the Plaintiff's argument goes, applies here, see Plaintiff's Opposition 17-18, and does

11

But same basic problem.

Does a choice-of-law provision in an agreement the Parent Company was not a party to nonetheless control the choice of law in the Parent Company's dispute with the Plaintiff? To carry its burden, the Parent Company needed to take on this question. It did not seek to.[20]

IV. **Express Warranty**

The Plaintiff's express warranty claims must be dismissed.

As to the existence of an alleged express warranty, the Plaintiff says only this:

> [The] Defendants expressly warranted that the printer would be fit for commercial use and of merchantable quality.

Complaint ¶ 29.

This is too little to go on.

There is no further information about any of the who-what-when-where-and-how questions. What did the Defendants actually say? How did they say it --- in writing or verbally? When were the relevant statements made --- before the printer was leased or after? Who from a given Defendant made the alleged statements? Indeed, which of the Defendants is said to have offered an express warranty?[21]

---

not require privity. See, e.g., Spring Motors Distribs., Inc. v. Ford Motor Co., 98 N.J. 555, 586 (1985).

[20] Like the Parent Company, the Servicer is not party to the relevant agreements. See Part II.B. The Servicer's motion to dismiss the Plaintiff's implied-warranties claim is therefore denied for the same burden-not-carried reason that the Parent Company's motion is denied. (Because the Servicer has not carried its burden, there is no reason, for now, to ask and answer this: if Plaintiff/Servicer privity is required, as the Defendants argue, was there such privity here? See Exhibit C at 31 (suggesting the possibility of direct interaction between the Plaintiff and two technicians associated with the Servicer).)

[21] There is a small bit more detail in the section of the complaint focused on alleged violations of the New Jersey Consumer Fraud Act. See Complaint ¶ 36. The allegation there: the Defendants "ma[de] false and misleading representations to

12

These are the basics, and absent even some details along these lines the Plaintiff's breach of express warranty claim cannot go forward. See Simmons v. Stryker Corp., 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008) ("Plaintiff's breach of warranty claim is devoid of any 'factual matter' to support the existence of an express warranty."); Heckman v. Samsung Elecs. Am., Inc., 2025 WL 2312328, at *9 (E.D. Pa. Aug. 11, 2025) (dismissing breach of warranty claim because the plaintiffs "fail[ed] to allege the terms of any express warranty, how that warranty was conveyed to them, how they relied on that warranty, or how any warranty term was breached"); Blanding v. Walmart Inc., 2024 WL 3433321, at *8 (E.D. Pa. July 15, 2024) (dismissing express warranty claim because complaint did not contain details of any guarantees or how they were relied upon); Behrens v. Amazon.com, Inc., 2023 WL 5985287, at *4 (D.N.J. Sept. 14, 2023) ("Plaintiff has not identified an affirmation, promise, or description . . . that could serve as the basis for a breach of express warranty claim.").

The Plaintiff's allegation is not meaningfully different than a bare assertion that there has been an express warranty breach. Under a notice pleading regime, that might be enough. But not under current law. See, e.g., Holland v. 9F Inc., 2024 WL 5086106, at *3 (D.N.J. Dec. 12, 2024).

Accordingly, the breach of express warranty claims must be dismissed as to all Defendants.

**V.   New Jersey Consumer Fraud Act**

Move now to the Plaintiff's New Jersey Consumer Fraud Act claim. It, too, must be dismissed for being too conclusory.

First, the complaint alleges that the Defendants violated the Act by making affirmative misrepresentations. See Complaint ¶¶ 34(a), 36; see generally Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 556 (2009) (as to the contours of the Consumer Fraud Act).

---

[the] Plaintiff regarding the quality, condition, and suitability of the leased . . . equipment." Id. But same problem with this allegation --- there is next to nothing in the way of who-what-when-where-and-how information, including as to which Defendant made the alleged representations.

13

But the complaint here alleges only that the "Defendants falsely represented that the equipment was fully functional, operational, and appropriate for Plaintiff's business use." Complaint ¶ 36.

This is too spare, largely for reasons that were discussed in Part IV. Among other things, the Plaintiff does not specify which of the four Defendants allegedly communicated something about the printer.

Second, the complaint alleges that the Act was violated because of material omissions made by the Defendants. See id. ¶¶ 34(b), 36; see generally Bosland, 197 N.J. at 556.

But as to this, the on-point allegation seems to be only that the Defendants engaged in "deceptive commercial practices by . . . [f]ailing to disclose known or discoverable defects." Complaint ¶ 34(b).

Some factual details are required, but no meaningful ones are put forward.

Third, the complaint alleges that the Defendants engaged in "deceptive commercial practices by . . . [c]ontinuing to demand lease payments for unusable equipment." Id. ¶ 34(c).

The Plaintiff's claim seems to be that this amounted to "unlawful conduct," Bosland, 197 N.J. at 557, of the sort that can sometimes undergird a Consumer Fraud Act claim.

But this argument does not work.

It is hard to know how this claim touches the Parent Company, the Servicer, and the Supplier --- the three Defendants that are not parties to the Per Image Agreement under which payments were apparently demanded.

And as to the Lender, which is a party to the Per Image Agreement, the complaint does not suggest that its conduct was "unlawful."

The Per Image Agreement was a "finance lease," Per Image Agreement § 17, and it imposes an "absolute and unconditional," id. § 4, obligation on the part of the Plaintiff to make periodic payments.

Mandatory payment obligations under such leases are regularly enforced under New York, New Jersey, and Connecticut law. See, e.g., Edison Generator Exch., Inc. v. Quality Bus. Commc'ns,

14

Inc., 2010 WL 2696637, at *4 (N.J. Super. Ct. App. Div. July 1, 2010) (New Jersey law); AT&T Credit Corp. v. Transglobal Telecom All., Inc., 966 F. Supp. 299, 303–04 (D.N.J. 1997) (New Jersey law); Highland Cap. Corp. v. Sassan Kafayi, DDS, 2020 WL 914710, at *3–4 (N.J. Super. Ct. App. Div. Feb. 26, 2020) (New Jersey law); Gen. Elec. Cap. Corp. v. Nat'l Tractor Trailer Sch., Inc., 667 N.Y.S.2d 614, 621 (Sup. Ct. 1997) (New York law); Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A., 247 F. Supp. 2d 352, 361–63 (S.D.N.Y. 2002) (New York law); TBF Fin., LLC v. Grassilli, 2003 WL 430505, at *2 (Conn. Super. Ct. Jan. 29, 2003) (Connecticut law).

Attempts to require mandatory payment are, in short, familiar, everyday things between businesses; without any substantial argument as to why, they cannot be chalked up as "unlawful conduct." Bosland, 197 N.J. at 557.

**VI.  Conclusion**

For the reasons set out above, the Court rules as follows:

The breach of contract claims are dismissed. See Part II.

The breach of implied warranties claims are dismissed as to the Lender and Supplier. See Part III.A–B.

The breach of express warranty claims are dismissed. See Part IV.

The New Jersey Consumer Fraud Act claims are dismissed. See Part V.

The rest of the claims can go forward.[22]

---

[22] The Defendants also move to dismiss the Plaintiff's negligence claims. See Defendants' Brief at 17–18; Complaint ¶¶ 42–45. There is plainly a good deal to the Defendants' argument. See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987) ("[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."); Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002) (similar); Ulbrich v. Groth, 310 Conn. 375, 391 n.14 (2013) (similar). But the question of whether a tort duty may have been owed here is better resolved after some factual development. Even narrow discovery as to the relationship between the Defendants and the

15

It is on this 12th day of November, 2025 **SO ORDERED.**

                                                              _____

                                                              Michael E. Farbiarz, U.S.D.J.

---

Plaintiff should presumably help to resolve the duty question one way or another, and to allow the Court to rule on a less abstract basis. (And proceeding that way makes sense, too, given that at least one piece of the case will in any event continue, under the Court's other rulings.) In addition, the Court will not resolve in this posture the defendants' motion as to the Plaintiff's declaratory judgment count. Nothing practical turns at this point on whether that count is or is not in the case.